UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TEAMSTERS LOCAL UNION NO. 135,    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        No. 1:25-cv-02278-JPH-TAB
                                  )
CITY OF SHELBYVILLE, INDIANA,     )
CHIEF BILL DWENGER,               )
                                  )
                Defendants.       )

**ORDER DENYING TEMPORARY RESTRAINING ORDER**

Teamsters Local Union 135 began picketing on October 17, 2025 in front

of the Horseshoe Indianapolis Casino at 4300 N. Michigan Road in Shelbyville.

On November 5, Shelbyville Police Department officers ordered the Teamsters

to disperse because they were trespassing.  The Teamsters seek a temporary

restraining order that would prevent the City of Shelbyville, its Police Chief Bill

Dwenger, and their agents from interfering with their picketing activity in

designated areas in front of the Horseshoe Casino.  Dkt. [3].  Because the

Teamsters have not shown that the locations where they seek to picket are

public property or private property historically dedicated to public expression,

that motion is **DENIED**.

## I.
## Facts and Background

The Court recites the facts from the affidavit of Teamsters President

Dustin Roach.  Dkt. 3-2.

The Teamsters have been organizing workers employed at the Horseshoe Casino in Shelbyville.  *Id.* at 1.  A union election through the National Labor Relations Board was scheduled for October 17, 2025, but it was postponed because of the government shutdown and Horseshoe Casino refused to let a third party conduct the election.  *Id.* at 2.  The Teamsters therefore organized a strike and began picketing in front of Horseshoe Casino, "outside its entrances located at or around 4300 N. Michigan Rd., Shelbyville, Indiana" ("the Picketing Site"), *id.*, in the areas depicted in photographs included in the Teamsters' complaint and brief.  *Id*; dkt. 1 at 5-8; dkt. 3-1 at 3–8.

On October 17, 2025, Mr. Roach spoke with Shelbyville Police Department officers about the lawful parameters of the protest.  Dkt. 3-2 at 2. The Teamsters then picketed "peacefully, and strikers did not violate the officers' instructions, or impede the ingress or egress of traffic through any of Horseshoe's entrances, or on the public street."  *Id.*  However, on November 5, 2025, Shelbyville Police Department officers told the Teamsters "to immediately disperse, and told them that they could not picket along the public road."  *Id.* at 3.  Since then, "[m]uch of the Teamsters picket line has been taken down." *Id.*  Picketing continues on a small piece of public land near one of Horseshoe Casino's parking lots across Michigan Road from the casino entrance.  *See* dkt. 12 at 7.  "But for the actions of Defendants, the Teamsters intend to picket at the Picketing Site again imminently."  Dkt. 3-2 at 3.

The Teamsters therefore filed this case against the City of Shelbyville and its Police Chief Bill Dwenger alleging violations of the First Amendment, the

National Labor Relations Act, and Indiana state law.  Dkt. 1.  The Teamsters seek a temporary restraining order that would prevent Defendants and their agents from interfering with the picketing activity at the Picketing Site.  Dkt. 3.

## II.
## Temporary Restraining Order Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021).  To obtain such extraordinary relief, the party seeking the temporary restraining order carries the burden of persuasion by a clear showing.  *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The standard for a temporary restraining order is the same as the standard for a preliminary injunction.  Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry."  *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022).  "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.*  "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to

non-parties." *Cassell*, 990 F.3d at 545.  This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).  "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III
### Analysis

Public ways and sidewalks are traditional public fora that "occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).  However, a traditional public forum is typically "public property—for instance, streets and parks—that has immemorially been held in trust for the use of the public." *Krasno v. Mnookin*, 148 F.4th 465, 483 (7th Cir. 2025).  Private property, by contrast, is a traditional public forum only when it is publicly open and closely "historically associated with the exercise of First Amendment rights." *Hudgens v. NLRB*, 424 U.S. 507, 515 (1976); *accord Reform America v. City of Detroit*, 37 F.4th 1138, 1153 (6th Cir. 2022) (citing *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972)).

Here, the parties agree that the Picketing Site belongs to Horseshoe Casino.  Dkt. 12 at 5; dkt. 13 at 2.  The Teamsters nevertheless argue that the Picketing Site is a traditional public forum because it is adjacent to North Michigan Road, which is a public road.  Dkt. 3-1 at 14; dkt. 13 at 3–6.

4

Defendants respond that the Picketing Site is Horseshoe Casino's private property that has not been dedicated to public expressive use, so the Teamsters are not likely to succeed on the claim that they're entitled to picket there. Dkt. 12 at 8.

Private property does not generally serve as a public forum even if the owner opens the property for public use, including for speech. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812–13 (2019); *see Hudgens*, 424 U.S. at 519. Instead, private property is a traditional public forum only when it is publicly open and closely "historically associated with the exercise of First Amendment rights." *Hudgens*, 424 U.S. at 515. As *Halleck* and *Hudgens* indicate, such a situation is exceptionally rare—it appears that Seventh Circuit has held that a traditional public forum existed on private property only once. *Freedom from Religion Found. v. City of Marshfield*, 203 F.3d 487, 494–95 (7th Cir. 2000) (holding that a section of a city park sold to a private organization remained a traditional public forum because it was not differentiated from the rest of the park and continued to be dedicated to public use).

Here, the Teamsters have not provided evidence of any historical exercise of First Amendment rights at the Picketing Site. *See* dkt. 1 at 5–8; dkt. 3-2; dkt. 13. The Teamsters are therefore unlikely to be able to show that the Picketing Site is a traditional public forum. *See City of Marshfield*, 203 F.3d at 494 ("Whether a property has historically been used for public expression plays an important role in determining if the property will be considered a public forum.").

5

The Picketing Site also appears to be integrated into Horseshoe Casino's operations, making it less like traditional public sidewalks or similar examples of traditional public fora[1]:



The Teamsters do not dispute that Horseshoe Casino owns the parking lots across Michigan Road, or that the sidewalks, grassy areas, and landscaping along Michigan Road merely connect those parking lots with Horseshoe Casino's facilities.  *See* dkt. 13.  This case therefore appears to be like those

---

[1] The Court takes judicial notice of Google Maps' satellite image of the property.  *See* Fed. R. Evid. 201.

cases holding that even publicly owned areas that include sidewalks are not traditional public fora when they are used for a limited purpose. *See Chicago Acorn v. Metro. Pier & Expo. Auth.*, 150 F.3d 695, 702 (7th Cir. 1998) (holding that publicly-owned sidewalks within Chicago's Navy Pier were not traditional public fora because they were internal to the pier, which is "an amusement park and a meeting and entertainment center" rather than a "right of way"); *United States v. Kokinda*, 497 U.S. 720, 723, 729–30 (1990) (plurality opinion) (explaining that a sidewalk used to "travel from the parking lot to the post office building" was not a traditional public forum).

Cases from this district and other courts of appeals show that more is required for private property to be a traditional public forum. *See Lewis v. McCracken*, 782 F. Supp. 2d 702, 712 (S.D. Ind. 2011) (finding that a private sidewalk was a traditional public forum because it ran adjacent to a public road, had crosswalks and traffic signals, and had "long been used by pedestrians as a means of traveling . . . to various parts of French Lick"); *United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 452 (6th Cir. 2004) (holding that a private sidewalk was a public forum when it "looks and feels like a typical public sidewalk"; "blends into the urban grid, borders the road, and looks just like any public sidewalk"; and serves as "a public thoroughfare"); *Venetian Casino Resort, LLC v. Local Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 944 (9th Cir. 2001) ("[T]he sidewalk in front of the Venetian and adjacent to Las Vegas Boulevard had been historically a public forum" used "to facilitate pedestrian traffic in daily

commercial life along the Las Vegas Strip generally."). The Teamsters have not shown that the Picketing Site is similar to the areas found to be a public forum in any of these cases. *See Kokinda*, 497 U.S. at 727 ("Nor is the right of access under consideration in this case [a] quintessential public sidewalk" because it did not "facilitate the daily commerce and life of the neighborhood or city.").

The Teamsters therefore have not shown a substantial likelihood of success on their First Amendment free speech claim that can justify the extraordinary remedy of a TRO.[2]

Finally, the Teamsters briefly argue that the National Labor Relations Act prevents Defendants from removing them from the picketing areas. Dkt. 3-1 at 17–19.[3] Defendants respond that the NLRA does not prevent them from enforcing local trespass law. Dkt. 12 at 12–13. The NLRA comprehensively regulates labor relations, so it preempts some "state and local regulation of activities that the NLRA protects or prohibits or arguably protects or prohibits." *Cannon v. Edgar*, 33 F.3d 880 883–84 (7th Cir. 1994). NLRA preemption "is not, however, absolute," *id.*, and the Teamsters have not identified authority showing that the NLRA preempts a local government's ability to enforce trespass law on private property. *See* dkt. 3-1 at 17–19.

---

[2] While the Teamsters mention a First Amendment freedom of assembly claim in their brief, the argument relies on the free-speech claim, dkt. 3-1 at 17, and the Teamsters did not address this claim in their reply brief, dkt. 13. This claim therefore does not support a TRO for the same reasons.

[3] The Teamsters did not address the NLRA claim in their reply brief. Dkt. 13.

Since the NLRA does not provide "immunity from discharge for acts of trespass," it's unlikely that it would preempt enforcement of state trespass law. *Cf. Glacier Nw., Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174,* 598 U.S. 771, 788 (2023) (Alito, J., concurring) (quoting *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 255 (1939)); *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 205 (1978) ("For while there are unquestionably examples of trespassory union activity in which the question whether it is protected is fairly debatable, experience under the [NLRA] teaches that such situations are rare and that a trespass is far more likely to be unprotected than protected."). The Teamsters therefore have not shown a likelihood of success justifying the extraordinary remedy of a TRO on this claim either.

## IV.
## Conclusion

The Teamsters' motion for temporary restraining order is **DENIED**. Dkt. [3]. The parties **ARE DIRECTED** to contact Magistrate Judge Baker's chambers to request a status conference regarding any anticipated motion for preliminary injunction.

**SO ORDERED.**

Date: 11/10/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

All electronically registered counsel

9