UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 135, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF SHELBYVILLE, INDIANA, ) <br> CHIEF BILL DWENGER, ) <br> ) <br> Defendants. ) | No. 1:25-cv-02278-JPH-TAB |

**ORDER DENYING PRELIMINARY INJUNCTION**

Teamsters Local Union 135 began picketing on October 17, 2025 in front of the Horseshoe Indianapolis Casino at 4300 N. Michigan Road in Shelbyville. On November 5, Shelbyville Police Department officers ordered the Teamsters to disperse because they were trespassing. The Teamsters seek a preliminary injunction that would prevent the City of Shelbyville, its Police Chief Bill Dwenger, and their agents from interfering with their picketing activity in designated areas in front of the Horseshoe Casino. Dkt. [21]. Because the Teamsters have not shown a likelihood of success justifying a preliminary injunction on their First Amendment and National Labor Relations Act claims, that motion is **DENIED**.

**I.
Facts and Background**

The parties have filed affidavits and other documentary evidence, the relevant parts of which are uncontested, so these facts are based on that designated evidence. *See* dkt. 21; dkt. 24.

1

The Teamsters have been organizing workers employed at the Horseshoe Casino in Shelbyville. Dkt. 21-1 at 1 (Roach decl.). A union election through the National Labor Relations Board was scheduled for October 17, 2025, but it was postponed because of the government shutdown and Horseshoe Casino refused to let a third party conduct the election. *Id.* at 2. The Teamsters therefore organized a strike and began picketing in front of Horseshoe Casino, "outside its entrances located at or around 4300 N. Michigan Rd., Shelbyville, Indiana" ("the Picketing Site"). *Id.* The Picketing Site is depicted in photographs included in the Teamsters' complaint and brief. Dkt. 1 at 5-8; dkt. 22 at 3–6.

On October 17, 2025, the president of the Teamsters local union, Dustin Roach, spoke with Shelbyville Police Department officers about the lawful parameters of the protest. Dkt. 21-1 at 2. The Teamsters then picketed "peacefully, and strikers did not violate the officers' instructions, or impede the ingress or egress of traffic through any of Horseshoe's entrances, or on the public street." *Id.* However, on November 5, 2025, Shelbyville Police Department officers told the Teamsters "to immediately disperse, and told them that they could not picket along the public road." *Id.* Since then, "[m]uch of the Teamsters picket line has dispersed." *Id.* at 3.[1] A union election has now been held and "the Teamsters won their recognition vote," but the National

---

[1] The Teamsters argue in reply that Defendants "preface their responding papers by insinuating that the Teamsters have engaged in various acts of lawlessness since the picketing began." Dkt. 25 at 2. The Court agrees that these allegations are not relevant to the legal issues here and therefore does not consider them. *See id.* at 4.

2

Labor Relations Board has not certified the results and the Teamsters' need to picket "remain[s] acute in the foreseeable future." Dkt. 27 at 1–2.

The Teamsters filed this case against the City of Shelbyville and its Police Chief Bill Dwenger alleging violations of the First Amendment, the National Labor Relations Act, and Indiana state law. Dkt. 1. The Court denied the Teamsters' motion for a temporary restraining order because the Teamsters had not shown that the Picketing Site is public property or private property historically dedicated to public expression. Dkt. 14. The Teamsters have filed a renewed motion for preliminary injunction that would prevent Defendants and their agents from interfering with the picketing activity at the Picketing Site. Dkt. 21; *see* dkt. 3.

## II.
## Preliminary Injunction Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding

on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III
### Analysis

The Teamsters seek a preliminary injunction under the First Amendment and the National Labor Relations Act ("NLRA"). Dkt. 22.

**A. First Amendment**

"The First Amendment, made applicable to the States by the Fourteenth Amendment, prohibits States from enforcing laws 'abridging the freedom of speech.'" *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (quoting U.S. CONST. amend. I). Public ways and sidewalks "occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). These

traditional public fora are typically "public property—for instance, streets and parks—that has immemorially been held in trust for the use of the public." *Krasno v. Mnookin*, 148 F.4th 465, 483 (7th Cir. 2025). Privately owned streets and sidewalks, however, are not "the equivalent, for First Amendment purposes, of municipally owned streets and sidewalks." *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 563 (1972); *accord Reform America v. City of Detroit*, 37 F.4th 1138, 1153 (6th Cir. 2022) (That a property at issue is privately owned "is problematic for [plaintiff's] First Amendment claim, because the First Amendment confers no general right for uninvited members of the public to speak on private property contrary to the proprietor's wishes.").

  Here, the Teamsters do not plan to picket in North Michigan Road, the public street on which Horseshoe Casino is located. Dkt. 22 at 9, 25; dkt. 24 at 6. Instead, they intend to picket "along" North Michigan Road, at the Picketing Site that is on Horseshoe Casino's private property. Dkt. 22 at 13, 23–25 (Teamsters' agreeing that "in this case . . . the sidewalks [a]re on private property"). The Teamsters therefore argue that "since North Michigan Road is a public thoroughfare, that means the land next to it falls within the category of *private property*" that is dedicated to public use under the First Amendment. Dkt. 25 at 7 (emphasis added). Defendants respond that the Picketing Site is Horseshoe Casino's private property that has not been dedicated to public expressive use. Dkt. 24 at 6–8.

  Given that it's undisputed that the Picketing Site is on Horseshoe Casino's private property, "[t]he question is, [u]nder what circumstances can

5

private property be treated as though it were public?" *Hudgens v. N.L.R.B.*, 424 U.S. 507, 516 (1976). Under the Teamsters' argument, courts would routinely treat private property that is adjacent to a public road as though it were public. Dkt. 22 at 24 ("All in all, since the Picketing Site is along a road that is physically indistinguishable from a public street and functions like a public street, it is subject to traditional public forum analysis."). This ignores the fundamental principle that "[t]he Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812–13 (2019); *see Tanner*, 407 U.S. at 569 ("The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use."). Applied here, "[t]o hold that [Horseshoe is] compelled by law to supply picketing areas for pickets to drive [its] customers away is to create a court-made law wholly disregarding the constitutional basis on which private ownership of property rests in this country." *Hudgens*, 424 U.S. at 517 (quoted in *Halleck*, 587 U.S. at 813).

Seventh Circuit precedent demonstrates that treating private property as a traditional public forum is the exception to the rule. *Freedom from Religion Found. v. City of Marshfield*, 203 F.3d 487, 494 (7th Cir. 2000) (holding that a section of a city park sold to a private organization remained a traditional public forum because it was not differentiated from the rest of the park and continued to be dedicated to public use); *see also Marsh v. Alabama*, 326 U.S. 501, 507–08 (1946) (holding that First Amendment protections applied when a

private company owned the entire town).  The Court's holding in *City of Marshfield* was based on exceptional facts that do not exist here and therefore does not support the Teamsters' argument that proximity to a public street alone is sufficient to justify treating private property as a traditional public forum.  *See* dkt. 22 at 20–22.[2]  Instead, to be treated as a public forum, the private property must be open to the public and closely "historically associated with the exercise of First Amendment rights."  *Hudgens*, 424 U.S. at 515; *see City of Marshfield*, 203 F.3d at 494 ("Whether a property has historically been used for public expression plays an important role in determining if the property will be considered a public forum.").

    Here, the Teamsters have not provided evidence of *any* historical exercise of expressive activity at the Picketing Site.  *See* dkt. 22; dkt. 24.  While the Teamsters provide several examples to show that North Michigan Road is used by the public to reach restaurants, gas stations, and a church, they don't explain why that's relevant to the public forum analysis or how it demonstrates the Teamsters right to picket on adjacent private property.  Dkt. 22 at 24.  Instead, Defendants' uncontested evidence is that the sidewalks in and near the Picketing Site "run only along and in the property of [Horseshoe] and do not connect to any other public sidewalk, and their sole purpose is to access" the

---

[2] The Teamsters do not contest that the Picketing Site is private property and rely on only its proximity to Michigan Road, without arguing that there's a public easement or right-of-way extending into the Picketing Site that could affect the First Amendment analysis.  *See* dkt. 22 at 24; dkt. 25 at 7–8.  The Court therefore does not delve into the parties' arguments about Indiana property law or Shelby County's property records.  *See* dkt. 25 at 5–7.

7

casino. Dkt. 24-7 at 2 (Comstock decl.).[3] The Teamsters also have not contested Horseshoe employees' declarations that other than the Teamsters' picketing beginning on October 17, 2025, they have no memory of "anyone using the sidewalk along Michigan Road for demonstrations or protests" since they started working for Horseshoe in 2009 and 2010. Dkt. 24-1 at 2 (Vassar decl.); dkt. 24-4 at 2 (Evans decl.). In fact, there were no sidewalks at all along this stretch of Michigan Road until 2008. *See* dkt. 24-7 at 2.

Cases from this district and the courts of appeals confirm that more is required for private property to be subject to the traditional public forum analysis for First Amendment purposes. *See Lewis v. McCracken*, 782 F. Supp. 2d 702, 712 (S.D. Ind. 2011) (holding that a private sidewalk was a traditional public forum because it ran adjacent to a public road, had crosswalks and traffic signals, and had "long been used by pedestrians as a means of traveling . . . to various parts of French Lick"); *United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 452 (6th Cir. 2004) (finding a public forum because the sidewalk "blends into the urban grid, borders the road, and looks just like any public sidewalk" and serves as "a public thoroughfare"); *Venetian Casino Resort, LLC v. Local Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 944 (9th Cir. 2001) ("[T]he sidewalk . . . adjacent to Las Vegas Boulevard had been historically a public forum" used "to facilitate

---

[3] While the Teamsters allege in reply that Horseshoe's sidewalk is "a thoroughfare sidewalk seamlessly connected to public sidewalks at either end," *id.* at 8, that allegation is unsupported by any evidence in the record and they later admit that the sidewalks "extend no further" than Horseshoe's property, *id.* at 13.

pedestrian traffic in daily commercial life along the Las Vegas Strip generally."). The throughline is that the sidewalks at issue in those cases were not merely along a public road, but traditionally used by the public.

In short, the Teamsters do not dispute that the Picketing Site is on Horseshoe's private property and that the sidewalks in the Picketing Site serve only as means to access Horseshoe's facilities. *See* dkt. 25; *United States v. Kokinda*, 497 U.S. 720, 723, 729–30 (1990) (plurality opinion) (explaining that a *public* sidewalk used to "travel from the parking lot to the post office building" was not a traditional public forum because it did not "facilitate the daily commerce and life of the neighborhood or city"); *see Chicago Acorn v. Metro. Pier & Expo. Auth.*, 150 F.3d 695, 702 (7th Cir. 1998) (holding that publicly-owned sidewalks within Chicago's Navy Pier were not traditional public fora because they were internal to the pier, which is "an amusement park and a meeting and entertainment center" rather than a "right of way"). Without "historical association . . . with a public forum," or "dedication of the property to public use," Horseshoe's private property is not a traditional public forum. *See City of Marshfield*, 203 F.3d at 494–95.

The Teamsters therefore have not shown a substantial likelihood of success on their First Amendment free speech claim that can support a preliminary injunction.[4]

---

[4] While the Teamsters mention a First Amendment freedom of assembly claim in their brief, the argument relies on the free-speech claim, dkt. 22 at 26, and the Teamsters did not address freedom of assembly in their reply brief, dkt. 25. This claim therefore does not support a preliminary injunction for the same reasons.

### B. NLRA Preemption

The Teamsters also briefly argue that the National Labor Relations Act prevents Defendants from removing them from the picketing areas. Dkt. 22 at 27–28. Defendants respond that the NLRA does not prevent them from enforcing local trespass law. Dkt. 24 at 13. The NLRA comprehensively regulates labor relations, so it preempts some "state and local regulation of activities that the NLRA protects or prohibits or arguably protects or prohibits." *Cannon v. Edgar*, 33 F.3d 880 883–84 (7th Cir. 1994). NLRA preemption "is not, however, absolute," *id.*, and the Teamsters have not identified authority showing that the NLRA preempts a local government's ability to enforce trespass law on private property. *See* dkt. 22 at 27–28.

The NLRA does not provide "immunity from discharge for acts of trespass" committed by an employee. *Glacier Nw., Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174,* 598 U.S. 771, 788 (2023) (Alito, J., concurring) (quoting *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 255 (1939)); *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 205 (1978) ("For while there are unquestionably examples of trespassory union activity in which the question whether it is protected is fairly debatable, experience under the [NLRA] teaches that such situations are rare and that a trespass is far more likely to be unprotected than protected."). So the Teamsters are unlikely to succeed on their claim that the NLRA preempts enforcement of state trespass law.

Indeed, the Court denied the Teamsters' motion for temporary restraining order under these authorities, dkt. 14 at 8–9, yet the Teamsters do not address them in their preliminary injunction brief, *see* dkt. 22, and do not address NLRA preemption at all in their reply brief, *see* dkt. 25.  The Teamsters therefore have not shown a likelihood of success on the merits based on NLRA preemption.[5]

## IV.
## Conclusion

The Teamsters' motion for preliminary injunction is **DENIED**.  Dkt. [21]; dkt. [3].

**SO ORDERED.**

Date: 1/6/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[5] While the Teamsters briefly request an evidentiary hearing, they have not identified any material factual dispute or the evidence they would intend to present.  Dkt. 21 at 2; *see Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) (A hearing is required only if "one is called for as a result of a fact issue created by" the preliminary-injunction filings.); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002) ("[T]he party seeking the evidentiary hearing must demonstrate that it has and intends to introduce" relevant evidence.).